St. Paul and Sioux City Railroad Co. v. Murphy.

ST. PAUL AND SIOUX CITY RAILROAD CO.

*vs.*

RICHARD G. MURPHY.

If the judgment entered on the verdict of a jury in a special proceeding to obtain the right of way for railroad purposes be defective in matters of form, the proper course is not to apply to this court for a writ of certiorari, but to the court in which it is entitled, for the correction of the record or vacation of the erroneous judgment.

St. Paul and Sioux City Railroad Co. v. Murphy.

An appeal taken by the railroad company from an award of commissioners under *Gen. Stat.*, *ch.* 34, *title* 1, *s.* 25, brings before the district court the propriety of an *increase,* as well as a *decrease* of the damages awarded.

The road was built and in operation in the fall of 1865, over the land in question with respondent's consent, "the question of damages for the right of way to be adjusted after the road was in operation." *Held,* that this means the question as to how much the land owner should receive in compensation for the easement the railroad company might acquire through such a special proceeding, and that the understanding of the parties must be taken to have been that such question should be adjusted, in default of purchase or voluntary gift, by such a proceeding.

The respondent being called as a witness in his own behalf was asked: "What was the farm worth at the time of the commencement of these proceedings in the fall of 1870, without the railroad being upon the farm, and what was its value at that time with the railroad upon the farm?" *Held,* not to be incorrect because not confined to the time when the railroad was completed, and that although the date of the award would have been proper, yet as the time fixed in the question was, to the extent of the difference between it and that of the award, in the petitioner's favor, it cannot complain thereof. *Simmons vs. Chicago and St. P. Ry.,* 18 *Minn.* 184, *followed,* as to the propriety of the question without regard to the particular date.

The witness testified that his house on the land was not built for an hotel, that it was built the year after the road was located and graded through the land, and that the depreciation in its value by the road was one fourth of its value. *Held,* that it was irrelevant and immaterial to inquire on cross-examination whether it was not built for an hotel, instead of a farm house, and because of the location of the railroad there to furnish hotel accomodations for customers which he supposed a depot at that point would bring to the house; as also to inquire whether the depreciation testified to in the value of the house, and also of the farm, was not mainly caused by the omission to locate a depot on the farm.

While it is improper on cross-examination to assume facts to have been proved which have not been; as, nevertheless, error must be shown affirmatively, if the case, as settled, does not purport to contain all the evidence, no benefit can be had in this court of an exception taken at the trial to the ruling of the court below in allowing a question to be answered against an objection that it assumed facts not proved.

Part of the respondent's land lay north, and the rest, being an eighty acre tract, lay south of a public road, running on the line between it and

the rest.   Respondent testified that he bought said eighty acre tract in 1858, of K; that K occupied it as a separate farm and had a farm house on it; that the road was there when he bought it; that it was tillable and had been cultivated by a tenant the last two years.

The jury were instructed that for the purpose of assessing the respondent's damages, his farm must be considered as a unit, but what such unit includes the jury must determine; that the petitioner contended that said eighty acres was a separate parcel of land, and not within the farm, and not to be considered in estimating the damages; that this was a question for them; if it was a part of the farm, they might consider the effect of the road upon respondent's convenience and safety in cultivating it from his dwelling in connection with his other land constituting his farm, otherwise not.   *Held*, not to be error.

Before taking these proceedings the company, at respondent's request, had made a certain under-crossing for his accommodation.   The provision of *ch.* 1, *Special Laws* 1864, *sub. ch.* 2, *s.* 2, that the company shall construct and maintain all proper and necessary farm crossings over the line of said road, means crossings from one side to the other of the railroad track, whether by passing over or under it.   If, therefore, such an under-crossing, as above, in *that* place was proper and necessary, the jury were bound to assess the damages on the theory that it would be forever maintained.   But the fact that it was built at respondent's request, and while the company was using his land under the agreement aforesaid as to the adjustment of damages, would not estop him from showing that it was not thus proper and necessary; nor is it evidence tending to prove that it was necessary, nor to prove any agreement by the petitioner to maintain it forever.

Whether in any case an under-crossing for cattle is, or not, necessary, is, at least, not one purely of law.

The railroad company duly instituted proceedings in the district court for Scott county, to obtain the right of way over the land of Richard G. Murphy, and commissioners were duly appointed, and their report was made and filed.   Murphy and the company each appealed to the district court, and both appeals were tried together resulting in a verdict in favor of Murphy for a sum greater than that awarded by the commissioners.   Judgment was entered upon the verdict, and the

St. Paul and Sioux City Railroad Co. v. Murphy.

company appealed to the supreme court. The appeal was argued and submitted at the October term, 1872, and was subsequently dismissed.

The case is now in this court upon the petition of the company for a writ of certiorari to said district court, upon which an order to show cause why such writ should not be granted was issued and returned duly served. Upon the return of the order to show cause the case was submitted by both parties upon the papers used at the said October term.

In all other respects the case is fully stated in the opinion.

HENRY HINDS, for Petitioner.

L. M. BROWN, for Respondent.

*By the Court.*—RIPLEY, CH. J.—The railroad company, on the 10th of November, 1870, instituted proceedings in the district court of Scott county, under *Gen. Stat., ch.* 34, *title* 1, *sec.* 14, *et seq.*, as authorized by *Special Laws of* 1870, *ch* 73, *sec.* 3, to obtain the right of way over respondent's land. By its petition it sought to " appropriate, take and use that part of said premises [viz.: lot 2 and w. 1-2 nw. 1-4 ne. 1-4 sec. 5 in Eagle Creek in said county,) now occupied by said corporation, being a strip one hundred feet wide running across said premises, from the east to the west line of the same, of which the centre line of the track of said railroad is the centre line, for the purpose of said railroad."

Commissioners were appointed November 12th, 1870. On the 19th December, 1870, they appraised the damages of respondent at $700.

Both parties appealed to the district court, and the appeals were tried together, upon which trial the jury returned a verdict for the respondent in the sum of $1,350.

The judgment entered on said verdict, reciting the fact that a jury had been duly empanelled and sworn to assess the damages for the right of way for said railroad, over and across the following described land, viz.: lot 2; w. 1-2 nw. 1-4 ne. 1-4 sec. 5, aforesaid, and had returned a verdict for respondent for said sum, proceeds to adjudge and determine that, upon payment of said sum and interest since the rendition of the verdict and costs, the " right to construct said railroad over, across and upon " said land, shall, as against respondent, his heirs and assigns, be and remain in said railroad company, its successors and assigns forever.

The petitioner objects that it is entitled to judgment, not only giving the right to construct the road over the particular government subdivisions, but upon the strip of land one hundred feet wide aforesaid, and also to take, use and appropriate it for the purposes of building said road, and that the judgment does not give this.

The statute prescribes that, upon verdict, judgment shall be entered that upon payment as above, " the right to construct said railroad, and " to take, use and appropriate any property in controversy on said appeal for the purposes aforesaid," shall, as against the parties interested in the verdict, be and remain in said corporation, &c., forever. *Gen. Stat., ch.* 34, *title* 1, *sec.* 26.

If the judgment entered in this case does not conform to the statute, the defect is merely formal, and the proper course is not to apply here for a writ of *certiorari,* but to the court in which it is entered to correct the record or vacate the erroneous judgment. *Minnesota Cent. R. R. Co. vs. McNamara,* 13 *Minn.* 508, *p.* 517.

As, moreover, it was peculiarly the affair and interest of the corporation to see to it that the judgment which would give it that to obtain which it instituted this proceeding

was properly entered, it is with a bad grace that this objection is made .here.    12 *Minn.* 66.

We proceed to consider the exceptions taken at the trial.

The petitioner moved in the district court to dismiss the appeal taken by the respondent, because it did not appear that it was taken from the assessment of damages made by the commissioners. The notice of appeal is, that the respondent "hereby appeals    *    *    *    from all that certain report of the commissioners or.assessment of damages made in said matter, and filed in the office of the clerk of said court on the 11th day of February, 1871." The motion was denied and petitioner excepted.

The petitioner, in support of the exception, urges that the law (*sec.* 22,) authorizes an appeal from the assessment, not from the whole report. That the appeal being taken in the alternative, from the report,,(which he says includes all the doings of the commissioners,) *or* assessment of damages, this motion was well taken.

This is being too critical. The intention to appeal, not from all the recitals of the report, but from the report as an award or assessment of damages, is too plain for misunderstanding. But if it were otherwise, we cannot see that the petitioner was prejudiced by the denial of the motion.

The petitioner's view of the matter is, that the two appeals being tried together, the verdict being in excess of the assessment can be supported only by the respondent's appeal, because, the petitioner says, an appeal taken by the railroad company would not bring before the court the propriety of an increase of the damages. This, we think, is a misconstruction of the statute.

Appeals from the assessments may be taken by any party interested, and bring before the appellate court the propriety of the amount of damages in respect to the parties to the

appeal ; the matter shall be submitted to a jury and tried as other appeal cases are tried; the jury shall re-assess the damages aforesaid, making the verdict conform to the justice and facts of the case; but the rule for ascertaining and fixing such damages shall be based upon the same principles that the commissioners are required to adopt in originally appraising and determining such damages. *Secs.* 22, 25.

The commissioners are to make an assessment of damages which will result to the land owner by reason of the construction of the road, and shall determine and appraise to him the amount of damages arising to him from the taking, after making due allowance for any benefit that such owner may derive from the road. (*Sec.* 19.) Whether, therefore, the land owner or the company appeal, the jury upon the trial of the appeal must appraise to the land owner the amount of damages arising to him from the taking, making due allowance for any benefit as aforesaid, making their verdict conform to the justice and facts of the case. The petitioner's position is, therefore, seen to be groundless; for whether upon these principles the damages would, in the estimation of the jury, be more or less than in the award appealed from, the law requires them to return a verdict according to their estimate.

The petitioner excepted to the decision of the district court, that the respondent was entitled to open and close. This point has been settled against the appellant. *Minn. Val. R. R. Co. vs. Doran,* 17 *Minn.* 188.

The "case containing exceptions," set out in the petition states that, it appeared from the evidence of the respondent, that the road was built and in operation in the fall of 1865, over these premises, with the respondent's consent, "the question of damages for right of way to be adjusted after the road was in operation."

St. Paul and Sioux City Railroad Co. v. Murphy.

The respondent being called as a witness in his own behalf' was asked this question.

. What was the farm worth at the time of the commencement of these proceedings in fall of 1870, without the railroad being upon the farm, and what was its value at that time with the railroad upon the farm ?

The petitioner objected to the question, " because the difference in value of the premises without and with the railroad is not the proper measure of damages for right of way, and because the proof of value ought to be confined to the time when the railroad was completed." The language of the objection was, " because both the witness and the question are incompetent."

Under this very ambiguous statement of what actually took place in the district court on this point, the petitioner; at least, cannot complain if we only consider the reason it urges in this court why the question was improper.

It is said, in the first place : " That the parol license to the company to construct the railroad over the respondent's premises is good, and would give a subsisting right until revoked, even if it could be revoked at all, which is doubtful. That the building of the railroad,. with the respondent's consent, the damages to be adjusted afterwards, is more than a mere parol license, for when taken in connection with the possession acquired pursuant to that consent, and the building of the road, it is a contract for the right of way, the complete execution of which a court of equity would decree. The petitioner's right in the premises has its root in that agreement and that time. The respondent's right to damages must originate at the same time that the appellant obtained possession."

In all this the petitioner is going a great way further than the statement aforesaid will warrant. Assuming that by the

expression " the question of damages for right of way," is meant the question as to how much the land owner should receive in compensation for all the railroad company could obtain by such a proceeding as the present, which we think is the fair inference from the language used, the obvious conclusion is, that what was to be paid for, was an easement was to be acquired on payment, not an easement already acquired. How the question is to be adjusted is left entirely unexplained, as is also the time of adjustment, except that it is to be at some time after the road has gone into operation.

With the above understanding, therefore, as to what was to be acquired and paid for, we can conceive of no other understanding between the parties than that the question should be adjusted as the law at that time regulating this corporation's proceedings, provided, viz. : by purchase or voluntary gift, and in default thereof, that such compensation should be ascertained and determined by such a proceeding as this. *Special Laws* 1864, *ch.* 1, *sub ch.* 2, § 2 ; *Session Laws of* 1855, *ch.* 24, *sec.* 5. All this, of course, excludes any idea of a contract by which the company had in 1865, acquired the easement they now seek to obtain, and this proceeding itself, from its inception, repels the idea of any such understanding on its part.

The petition sets forth that the " road now runs and is operated on respondent's land," that this strip is needed for its construction and operation, that the company "*is unable to agree*" with him " for the right of way over said premises, that it is and will be necessary for said corporation to appropriate, take and use" said strip for the purposes of said railroad, which is that of building and operating a railroad from St. Paul, &c. This is as plain a statement as possible that the corporation need something they have not got.

The petition further states that not being able to agree with

respondent for this, it is necessary that commissioners should be appointed for the purpose of determining the compensation to be paid therefor.

It is settled in this court that, in proceedings under the *General Statutes*, the title to the premises sought to be taken for the use of the road does not vest in the company before judgment on the verdict or assessment. That the first step in the process of taking is the assessment of damages, and as the damages are to be determined by the commissioners, the value of the premises at that time may fairly be made the standard of compensation. Certainly the petitioner cannot say that this is unfair, on the face of its allegations in its petition.

Then, with reference to the objection that the building and running of the railroad since 1865, might have greatly increased the value of the land, the observations of the court in *Denman vs. Winona and St. Peter R. R.* 10 *Minn., p.* 282, are quite pertinent.

"The right which the company sought to obtain in this case, not having been acquired by purchase or gift, could only be acquired by proceedings through a commission, as pointed out in the charter. These proceedings the company, and not the land owner, had the right to set on foot at any time and before any expenditure had been made on the land. If the company sees fit to go on and put the road in operation before assessing the land damages, and is in consequence compelled to pay an advanced price corresponding with the general advance of property as the country grows older, it was in its power to prevent such a result."

The district court in this case, by its ruling, allowed the time of the commencement of these proceedings to be taken, at which to assess the value, which was about six weeks before the assessment. This, however, being to the extent of such difference, in petitioner's favor, it cannot object that it should

have been the value at the date of the assessment, which was inquired about. As to the propriety of the question, without regard to the particular date, in the case of *Simmons vs. St. Paul & Chicago R. R. Co.* 18 *Minn.* 184, we quote Redfield's statement, that the value of the land taken to the owner is most readily and fairly ascertained by determining the value of the whole land without the railroad, and of the portion remaining after the railway is built, and we add that we cannot see why this is erroneous, nor why it is not allowable to ask witnesses the direct question, what the land is now worth and what it will be when the work is completed. In the present case the road had been long completed and in operation, but in view of the passage quoted from *Denman vs. W. & St. P. R. R.*, the first branch of the question put to respondent is equivalent to an inquiry as to the value at the time of the commencement of proceedings in a case in which the road had not been constructed, while the other corresponds to an inquiry, in such case, as to what the value will be when the road is completed. The question simply calls for the steps of a process by which to ascertain the owner's damages.

As held in *Simmons'* case above referred to, it would have been entirely competent for the respondent to have stated his opinion as to the amount of such damages. If he had been asked for his opinion he would naturally, and very properly, have considered, first, what the value of his farm would be if this road was not upon it; and second, what was its value as it actually was, and he would consider the road to have damaged him in the excess of the former over the latter amount. If he can be asked for the result of a process, he can surely be asked for the steps in the process.

The question does not imply, nor do we mean to imply, that in considering what his farm would be worth in the market without the railroad, the witness might fix such value at what

St. Paul and Sioux City Railroad Co. v. Murphy.

the price would be worth with the road running near it, but not on it. We have heretofore pointed out that this would be incorrect. *Carli vs. Stillwater, &c., R. R.*, 16 *Minn.* 260.

And while the question does not so imply, it does not appear from his answer thereto that the witness proceeded upon any such hypothesis. My farm, he says, would then have been worth $12,960, without the railroad, and with the railroad there it was then in fact worth only $8,750. We think the objection to the question was properly overruled.

The witness also testified, that his dwelling house was worth about $7,000, and was built in 1859, the year after the railroad was located and graded over his premises, and that the depreciation in its value by the road was one-fourth of its value. He had also testified that his house was built for a dwelling and not for an hotel.

On his cross-examination he was asked whether it was not built for an hotel, instead of a farm house, and because of the location of the railroad there, with a junction for a branch to Minneapolis, to furnish hotel accommodations for customers, which the respondent supposed a depot at that junction would bring to the house. This being objected to as irrelevant and immaterial, the objection was sustained and petitioner excepted. The objection was well taken.

It is impossible to see what bearing the motives or expectations which led the respondent to build the house in 1859, could have had on its value in 1870. Nor does the case disclose any reason for supposing that an answer to the question would not have been a repetition of the statement that the house was not built for a hotel.

The following question, being objected to on the same grounds as the above, was also excluded and the appellant excepted. " State whether the depreciation in the value of the house, and also of the farm, to which you have testified

the difference in value, is not mainly caused by the omission to locate a depot on your farm ?"

If, in point of fact, there was not a depot on the land, it is likely enough that if there had been that might have made the farm as valuable in the market with the railroad as without it. The beneficial effect of the depot might have offset the injurious effect of the road. But that is quite immaterial as respects the compensation to which the respondent was entitled. That he would not have been injured if the circumstances had been different, is no reason why he should not be paid for the actual injury sustained. It seems, too, to be altogether beside the case to speak of the not putting a depot on respondent's land as causing a depreciation. The land, for example, would sell for a certain sum if there were no railroad there. If there were no road, there could be no depot. The depot, therefore, could not possibly be an element of the value of the land without the road. The location of the road over the land diminishes the value. A depot may lessen the depreciation, its absence certainly cannot be said to cause it.

Take the case put by the petitioner, viz.: that at the time the road was built, and for several years, the respondent supposed that a depot would be located on this land, and that this raised the value of the land in the opinion of the respondent, and those who shared his expectation, but that such expectation not having been realized at the end of four or five years, their estimate of the value had changed for the worse. It is certainly true that respondent is not entitled to receive the amount of such difference in estimate as damages. But it is just as true that his evidence does not on its face, at least, include it. He swears to the value of his farm in 1870, without the railroad, not to what it would have been worth with the road and a depot, and then he estimates its value as it is with the railroad upon it.

St. Paul and Sioux City Railroad Co. v. Murphy.

If the petitioner had wished to show that in saying that his farm would have been worth $12,960, without the road, the respondent either did not mean what he said; that he really meant to say that $12,960, was what he valued it at so long as he believed there was to be a depot there; or, that his testimony was in fact false, it should have taken the proper course to show it. The question excluded was, as already stated, altogether irrelevant for any such purpose.

During the progress of the trial, A. Gould, a witness on the part of the petitioner, was asked on cross-examination the following question: "Assuming that the railroad company is responsible for stock injured or killed while crossing the track on plaintiff's premises, and assuming that the plaintiff has got to go to law with the defendant to get pay for stock killed or injured, do not such risks materially reduce the value of the property thus situated in the market?"

The counsel for the defendant objected to the evidence as incompetent, as there was no evidence showing that such damages would not be paid without suit. The court overruled the objection and the counsel for defendant excepted.

It is improper on cross-examination to assume facts to have been proved which have not been, but the petitioner must show error affirmatively, *i. e*, in this instance, before error can be assigned upon this ruling the petitioner must show, affirmatively, that there was no evidence in the case tending to show that such damages would not be paid without suit. The case does not undertake to set out all the evidence, but only certain portions of it, and counsel's statement aforesaid proves nothing. For aught that appears this very witness might have stated facts tending to prove all that the question assumes, for the case sets out nothing of his testimony but his answer to the question. We cannot say, therefore, that the question assumed facts not proper. As no other objection was specified

at the trial, the additional reasons urged in this court why the objection of the petitioner was improperly overruled, cannot be considered.

The land in respect to the damages to which as one farm the respondent testified as above mentioned, included 265 50-100 acres, 80 acres of this amount, viz.: e. 1-2 s. w. 1-4, sec. 5, aforesaid lay south, the rest north of a public road. The respondent testified that he bought said 80 acre tract in 1858, of said Keep. "Keep occupied his 80 as a separate farm of his own, and had a farm house on it. The rest of my land is separated from the Keep 80 by a public road, and was at the time I bought it." The case also here states that " the language of the witness was that the public highway runs along the line between the Keep land and the land that I bought of Moore. It did at the time when I purchased the Keep land." The witness also stated that " the Keep 80 is tillable and has been cultivated by a tenant for the last two years."

The jury, among other matters, were instructed that " for the purpose of the assessment of such compensation as the plaintiff is entitled to, the plaintiff's farm must be considered as a unit; but what such unit includes the jury must determine. In this case the counsel for the railroad company contends that the eighty acres south of the public highway (the Keep 80) is a separate parcel of land, and not within the farm and not to be considered in estimating the compensation to Major Murphy. This question is to be determined by the jury. If it is a part of the farm, then the jury may take into consideration the effect of the railroad upon his convenience and safety in cultivating it from his dwelling, in connection with his other lands constituting his farm, otherwise not." The case states that " this charge the defendant excepted to."

The petitioner contends, 1st, that said " Keep 80 " is, as a matter of law, upon the evidence of the respondent, a sepa-

rate farm occupied by a tenant, and it was therefore erroneous to leave it to the jury upon the evidence whether it was a part of the farm for the purpose of assessment of damages ; 2d, admitting it to be part of the farm for such purpose, it was error to instruct the jury to take into consideration the effect of the road upon respondent's convenience and safety as aforesaid.

With respect to the first objection it is to be considered that unless in law a highway thus located would prevent the land lying on both sides thereof from being one farm for this purpose, or unless the cultivation of a certain part by a tenant for the two previous years would sever that part, and make it a distinct farm, for the purposes of the trial, this objection is not open to the appellant in the present case, which does not set out all the evidence.

If the respondent had owned all the land he now owns when this highway was laid out and opened, such proceeding would not *per se* have made this 80 acre tract a separate farm. The public would simply have acquired an easement over a certain part of his land.

At the time of this purchase the respondent was already the owner of the land adjoining this 80, subject to the public easement.   After the purchase he owned the 80 acre tract also, the whole of it up to and adjoining his former property, a strip of it being subject to the public easement, just as what he formerly owned was.

Keep had used and occupied it as a separate farm, but that had no tendency to show that the respondent continued to do so after he bought it.   And if the imposition of a public easement upon and over a body of land does not divide it into two distinct farms, certainly, in buying land subject to such easement, the existence of the easement does not, of itself,

operate to keep the land a separate farm from that which it adjoins.

And as to the cultivation by a tenant, it seems still more unreasonable to hold that it would, in law, make this 80 acre tract a " separate farm occupied by a tenant."

That it was so cultivated is entirely consistent with that which the respondent states *was* proved, viz. : that the tenant was the respondent's son, living with his father, in his father's house, and cultivating the land on shares. .

The several governmental subdivisions composing respondent's property [including the 80 acre tract] formed *prima facie* but one body of land, since they all adjoined. All but this, it appears, was suitable for pasture only. For aught that appears the respondent might have cultivated this part of his property continuously from 1858, to the time of his letting it to his son, living meanwhile, as now, on the other part, and using it only for pasture, just as for aught that appears he might have been doing at the time of the trial in June, 1871. If such were the facts, it could not be said as matter of law, that here were two distinct and separate farms, merely because this tract had been cultivated during two seasons by a tenant.

As we cannot say that these circumstances were not in evidence, the appellant's first objection aforesaid cannot prevail. Nor can the second. The petitioner says that in the case of the *W. & St. P. R. R. vs. Waldron*, 11 *Minn.* 515, it seems to be conceded that the matter of " inconvenience in crossing the track," is not to be considered by the jury. That is true, but the matter of convenience in cultivating this tract from respondent's dwelling, in connection with his other lands, is by no means synonymous with " inconvenience in crossing the track."

The act under which the petitioner exists, *Special Laws of* 1864, *ch.* 1, *sub ch.* 2, *sec.* 2, provides " that said company

shall construct and maintain all proper and necessary cattle guards and farm crossings over the line of said road, and also within two years after the completion of their road through any improved land, shall build, keep and maintain a legal fence on each side of their road through such improved land."

We gather from the case that the road was fenced through respondent's land with gates on each side of the road at a crossing. Whether it was so fenced by the company or by the plaintiff, or whether under said act the company would be bound to fence, the case does not enable us to determine. The district court held that it was so bound. But since the land was suitable for and used for pasture, and there was water for stock on the north, but none south of the road, the safety of the stock would require fences, and the land south of the road could not be used unless there were gates or bars therein, so that stock could be driven to water across the road.

This, of itself, would justify this part of the charge as against the criticism of the petitioner, for as remarked in *Minn. Valley Co. vs. Doran,* 17 *Minn.,* *supra,* " it cannot be said that delay and labor in opening and shutting gates, and taking down and putting up bars, are the elements that make up, or go to make up, the mere inconvenience in crossing the track," to which petitioner refers. " To take down the bars or open the gates, would be a pre-requisite to crossing, not a ' mere inconvenience in crossing ' the track."

So too, the frequent passage of trains would necessarily interfere, to some extent, greater or less in proportion to its frequency, with such convenience of cultivation in a manner altogether distinct from such " mere inconvenience in crossing."

As to the want of " safety," this, the petitioner insists, is like " inconvenience in crossing the track," merely speculative and intangible, too remote and uncertain to be legitimate ele-

ments of land damages for right of way, and even more so, being contingent upon still more remote circumstances of care or carelessness than the former.

We cannot agree with the petitioner. The petitioner would not contend, for example, that it would be as positively and entirely safe to cultivate this tract from respondent's house, in connection with the rest of his land, across a railroad over which trains were constantly passing, as if there were no railroad there. Reason tells us that it would not, and that the want of such safety is in proportion to the frequency of such passage.

" It is settled that the appraisal of land damages is a bar to claims for injuries by fire from the *engines obstructing access to buildings, exposing cattle or persons to injury*, and many such risks." 1 *Redfield, ch.* 11, *s.*12, § 74, 4. It is a bar because such risks are legitimate elements of damages for right of way.

The case states that the respondent testified " that over the track of the railroad a crossing was constructed by the defendant in the fall of 1865, at a point where travel was accustomed to go, and remained there until fall of 1870, when it was, at plaintiff's request, changed to a point opposite the house, where it was constructed with gates, at plaintiff's request, and for his convenience, at both boundaries of the railroad strip, with cross fences leading up to the railroad track, and with cattle guards on each side of the crossing. The plaintiff kept the gates closed solely to prevent injury to stock in passing and repassing to and from water.

" This witness, and numerous other witnesses on the part of the plaintiff, testified that the depreciation in the value of the farm by the railroad being there was in a large measure produced by the inconvenience of using the pasture land south of the railroad for stock with two gates to open and close, and driving stock to and from water once or twice a day across

the track ; and to the danger and risk of stock being injured by passing trains while crossing and recrossing the track to and from water.

" This witness also testified that in fall of 1870, in October, he had a conversation with the president of the defendant on the premises, in which he requested the defendant to construct two crossings under the track of the railroad suitable for cattle to pass and repass under the track from the pasture south of the railroad to the .water north of the railroad. Soon after the conversation the defendant in October 1870, constructed under the railroad on plaintiff's premises a pass or crossing for stock, running from the pasture south of the railroad south fence to the pasture north of the railroad north fence nine feet wide at top, six and one half feet wide at bottom, and seven feet high in the clear ; and defendant's counsel proposed that it should be maintained and kept open in the future for the use of the plaintiff."

The court instructed the jury " that the railroad company, by their charter, are bound to fence the road, and maintain suitable and necessary farm crossings. The compensation is to be fixed with reference to such obligation. If the company fail in that respect, the land-owner has other remedies. The counsel for the railroad company insists that the under-crossing for cattle is a farm crossing within the meaning of the charter, and that the company having made it before these proceedings were commenced, is bound in the law to maintain it there for all time,and cannot for any cause or necessity fill up or destroy it without making proper compensation for it. I cannot hold that such under-crossing for cattle is farm-crossing within the meaning of the charter, and I must hold that it would require something more than the face of those proceedings carried to legitimate and successful results, to fix such obligation upon the company ; that if the company should for

any cause find it necessary or desirable to fill up or destroy that cattle-pass under the road, they could do so at their own volition, without incurring any obligation in the law to Major Murphy, or his heirs or assigns. To fix such obligation upon the company, some instrument in writing containing it, so executed by the company as to satisfy the requirements of the statute of frauds, would be necessary."

The case states that " to this instruction of the court the defendant excepted."

The instruction contains more than one distinct proposition of law. Some, for instance all those in the first paragraph of the instruction, are not questioned by the petitioner. The exception, of course, falls within the settled rule so often enunciated in this court, that such a general exception to a general charge amounts to nothing. A new trial would not therefore be granted, though some part of this charge should be fairly open to objection.

But as both parties have argued the questions raised by the petitioner upon a part of this instruction, we will proceed to state the view we take of it.

The petitioner quotes from the *Extra Sess. Laws of* 1857, *sec.* 19, *p.* 25, *ch.* 3 *of ch.* 1, of the act disposing of the congressional land grant of 1857, the provision that the company "shall make and keep in repair such farm crossings as shall be necessary to accommodate the several land owners through which the said road may pass."

The petitioner says "that the crossing must, under this law, be such as to accommodate the land owner, which this emphatically is, and if not he is estopped to say it is not, it having been constructed at his request. Being therefore necessary for his accommodation, it is within the charter, and the company is entitled to the benefit of its effect in reducing the damages."

St. Paul and Sioux City Railroad Co. v. Murphy.

The law of 1864, repeals all acts and parts of acts if inconsistent with it. The provision therein contained and above quoted respecting cattle guards and farm-crossings, governs here, instead of the passage quoted by appellant from the law of 1857, so far as that is inconsistent with it.

The compensation of the land owner is to be fixed, as the court below charged, with reference to the obligation of the company to make and maintain *from the time it acquired the right of way by virtue of these proceedings* proper and necessary farm-crossings through the respondent's land. If *such* an under-crossing as this, in *that* place, was proper and *necessary,* the jury were bound to assess the damages upon the assumption that it will be forever maintained.

But the fact that the company made it at respondent's request while it was using his land by his permission, does not estop him from saying that it was not thus necessary. It is not even evidence tending to show that it was necessary, any more than the fact that he asked the company to make two, tended to prove that two were necessary. So it was certainly true that the company, for aught that had occurred prior to these proceedings, might fill it up at pleasure.

It was using his land by his leave upon an understanding as to the adjustment of damages, and his request to make two under-crossings was partially complied with. That certainly did not deprive it of the right to take his land by these proceedings *in invitum* for its purposes, subject only to such burdens as its charter imposed.

The construction of this crossing was not, as petitioner supposes, the execution of a contract between the parties that the company should forever maintain such crossing. The evidence has no tendency to prove the existence of any such agreement. The petitioner did not itself so understand it, as appears by the statement that its counsel at the trial " pro-

posed that it should be maintained and kept open in future for the use of the plaintiff."

But the charge was that " I cannot hold that such under-crossing for cattle is farm crossing within the meaning of the charter." This seems to be intended to give the impression, which it does to us, that " an under-crossing for cattle " could not under any circumstances be embraced in the words of the law, but that by " farm-crossing " is there meant a crossing *over* the surface. We should not be willing to take so limited a view of the obligations of the company.

In *Wheeler vs. Rochester, &c. R. R.* 12 *Barb.* 227, under the general act providing that railroad corporations should make and maintain farm-crossings of the road for the use of proprietors of land adjoining such railroad, it was held that " farm-crossing" means a passage over as well as under the road.

We think that the language of this charter " proper and necessary farm-crossings over the line of said road," was intended to mean crossings from one side to the other of the railroad, whether by passing over or under the track. Nevertheless it certainly cannot be said that the evidence here proves that this particular under-crossing was necessary. With it the farm would be much less damaged by the road, but the road is not in all cases bound to make such crossings as will reduce the damages to a *minimum*. The cost of that might impose a burden upon the company, out of all proportion to the value of the farm. May it not make such crossings as will enable the owner to make the same kind of use as before, and pay for the depreciation ?

This case does not purport to contain all the evidence. It cannot, therefore, be said with certainty, as to such a crossing as this, whether it was necessary or highly convenient. Upon the evidence before us, however, it would seem to have been the latter.

But assuming, what we think probable, that there may be cases in which an under-crossing for cattle would be necessary, the question of such necessity, however determined, is not at least one purely of law. For suppose it appeared in this case that the under-crossing was in fact necessary, the charge would prevent the jury from assessing the damages with reference to the obligation of the company, to maintain it; telling them, as *matter of law*, that no under-crossing for cattle is within the statute.

Since we are of opinion on the whole matter, that if the proceedings in the district court were before us on a return to the writ applied for, no sufficient ground would appear for reversing the judgment, it is unnecessary to consider the respondent's objection that the application comes too late.

The petition is dismissed.