JAMES E. WELLINGTON & others *vs.* BOSTON & MAINE RAILROAD.

Middlesex.   November 29, 1892. — March 1, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Land Damages — Railroad — Sheriff's Jury — Evidence — Verdict.*

If a sufficient number of the jurors summoned to try a petition for an assessment of damages for the taking of land for a railroad are not present, it is no objection to talesmen returned by the sheriff under the provisions of the Pub. Sts. c. 49, § 41, that they are not residents of the nearest towns to that in which the land lies, if they are qualified and liable to serve in that county.

At the trial of a petition before a sheriff's jury, for an assessment of damages occasioned to the petitioner by the taking of his land by a railroad corporation, evidence of a declaration of the general manager of the corporation as to the purpose to which the land was to be put is incompetent; and the award by the county commissioners of damages for the taking is also properly excluded.

At the trial of a joint petition by three persons before a sheriff's jury, for an assessment of damages sustained by each petitioner by the taking of his land for railroad purposes, the petitioners contended that each could recover the value of his own land taken and the damages occasioned to his other lands in the same village by the whole taking; and they were allowed to introduce evidence upon this theory. The respondent asked instructions based upon a contrary theory, which were refused. *Held,* that the verdicts must be set aside.

PETITION to the county commissioners for a sheriff's jury, to assess the damages sustained by the taking by the respondent of the petitioners' land in that part of Medford called Wellington for its railroad. The jury awarded each petitioner a certain sum, and their verdicts were accepted by the Superior Court; and the respondent appealed to this court. The facts appear in the opinion.

*S. Butler,* for the respondent.

*J. D. Long,* (*B. E. Perry* with him,) for the petitioners.

BARKER, J. 1. As there must be a new trial upon other grounds, we need not decide whether the respondent can take advantage of the irregularities in procuring the jury. The statute (Pub. Sts. c. 49, § 39) has been construed to exclude jurors living in the town where the lands lie, and to authorize requisitions upon any three towns of the county which adjoin that town, without reference to the question of proximity to the lands. *Wyman* v. *Lexington & West Cambridge Railroad,* 13 Met. 316, 324. *Brown* v. *Boston & Worcester Railroad,* 13 Met. 327, *n.* *Meacham* v. *Fitchburg Railroad,* 4 Cush. 291, 295. *Shattuck* v. *Stoneham Branch Railroad,* 6 Allen, 115. *Reed* v. *Hanover Branch Railroad,* 105 Mass. 303. Requisitions were properly made upon three towns. But in consequence of an objection in advance of the hearing, the sheriff irregularly omitted to notify two of the men drawn, and made a requisition for jurors from a fourth town. When objection was made to the list so constituted, instead of dismissing the jurors from the fourth town, he excused those from a town upon which one of the original requisitions was made. In so doing he chose arbitrarily between jurors present, and the expense, which in these cases is borne by the parties, was increased. There was no error in returning the talesmen. The statute (Pub. Sts. c. 49, § 41) which prescribes the course to be pursued when enough jurors are not present directs merely the return of "suitable persons to supply the deficiency," and does not require them to be residents of the nearest towns. It is only necessary that they shall be qualified and liable to serve in that county. If the sheriff had required the challenges to be made before the choice of the foreman, all the jurors who served would have been able to participate in the choice.

2. Evidence of the declaration of the general manager of the respondent as to the purpose to which the land was to be put was incompetent. He was not an agent of the corporation for the purpose of making admissions. *Boston & Maine Railroad* v. *Ordway,* 140 Mass. 510. *Williamson* v. *Cambridge Railroad,* 144 Mass. 148. *Leistritz* v. *American Zylonite Co.* 154 Mass. 382. *Richstain* v. *Washington Mills,* 157 Mass. 538. The evidence, however, was of little importance, as the statement was merely that the land was to be used for a purpose for which

the respondent could lawfully use it, and the jury could properly consider the possibility of such a use.

3. The award of the commissioners was properly excluded. It was offered only as showing their estimate of the damages, and not because it contained an order affecting the damages, as was the case in *White* v. *Boston & Providence Railroad*, 6 Cush. 420, and in *Chapin* v. *Boston & Providence Railroad*, 6 Cush. 422. To admit such an award for the purpose for which it was offered in the present case would be to introduce the opinion of the commissioners, without affording the petitioners an opportunity for cross-examination, or enabling the jury to weigh the opinion in connection with the appearance of the commissioners and their means of knowledge. Being merely the decision from which in effect the petitioners had appealed, it was immaterial.

4. The verdicts must be set aside, because the jury were permitted to award damages upon an erroneous view of the law. There are three separate verdicts. The claimants join in the petition, but their rights are distinct. They represent themselves as severally dissatisfied with the estimate made by the commissioners of their several damages by the taking of their respective lands, and each asks for the damage done by the taking of his own land, and not for damage to his land by the taking of the land of the others. The petitioners own much of the village of Wellington and some outlying lands. When the railroad was built, about 1845, the locality was a farm of some one hundred and fifty acres, owned in common by two brothers, James and Isaac Wellington. The railroad skirted the line of demarcation between a swamp on the east and the upland which is now the village. The Medford branch was built about 1852, leaving the main line at the village. The Wellingtons settled for their damages when the main line and the branch were built. About 1853 they divided the farm into four parts, each taking two in severalty, and the tracts were then cut up into house lots, which were put upon the market. Many of them have been sold and built upon, and others have been sold, but remain vacant. The streets dividing the land have been wrought, and are in use, many of them having concrete walks and shade trees. Middlesex Avenue, a county way, runs through the village nearly parallel with the main line of railroad, and at a distance varying

from about twelve hundred to four hundred feet. The lands now taken are on the village side of the main line, and are a strip of marsh one hundred feet wide, belonging to James E. Wellington, a strip one hundred feet wide at its south end and thirty feet wide at its north end, belonging in common to James E. Wellington, Angelina W. Crosby, and Adrianna W. Kidder, and another strip 12¾ feet wide, separated from the second by the station grounds, and owned by James E. Wellington, as trustee under the will of Isaac Wellington. This strip is entirely within Craddock Avenue, one of the streets dividing the land into house lots, and is on the opposite side of the street from the lots. The narrow part of the second parcel is also within the same street, and on the opposite side from the lots. The rest of the second parcel was taken from the rear of lots which lay between the railroad and another avenue, and which were of unequal depth, but the smallest of which, after the taking, was at least one hundred and fifty feet deep. The first parcel was swamp land outside the village. The original partition left the site of the village in four rectangular parcels, two of which, given in severalty to Isaac Wellington, touched each other near the centre of the whole tract, and the two given to James E. Wellington were entirely separate.

The petitioners contended, at the trial, that each could recover the value of his own land taken, and the damages caused to all of his other lands in Wellington by the whole taking, that is, by devoting to railroad purposes the whole strip taken from all three petitioners; and they were allowed to introduce evidence upon this theory. The respondent asked instructions based upon a contrary theory, which were refused. One of the petitioners was allowed to testify as to the value of a parcel of land not divided into lots, a quarter of a mile distant, and on the farther side of the village from the railroad, and to give his opinion as to the effect of the taking of April 29, 1890, that is, of the whole taking, upon that parcel. A plan of the village and adjacent lands, called the Binney plan, was used at the trial. An expert was allowed, without restriction, to give his opinion of the effect of the taking upon other lands of the petitioners, as shown on the Binney plan, and other witnesses were allowed to testify to the effect of the taking upon all of the petitioners' land not taken.

We see nothing in the case to indicate that any special or peculiar damage was caused to any of the remaining lands of the petitioners, save the lots immediately adjoining the land taken, or upon the same street with the railroad.   If the widening of the railroad and the laying of additional tracks, whether for traffic or to be used as a freight yard, made the village less desirable as a place of residence, because it was more difficult or dangerous to cross the tracks in passing from one locality to another, or because of increased noise or smoke, or because the tracks, or the cars which might be stored upon them, might be unsightly and displeasing, none of these circumstances would properly be elements of the damages to be awarded to lots no portion of which was taken, because they were general, affecting the whole village, and not special and peculiar to the lands of the petitioners.   *Eames* v. *New England Worsted Co.* 11 Met. 570.   *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad*, 10 Cush. 385, 391.   *Boston & Worcester Railroad* v. *Old Colony Railroad*, 12 Cush. 605.   *Fuller* v. *Chicopee Manuf. Co.* 16 Gray, 46.   *Whitman* v. *Boston & Maine Railroad*, 7 Allen, 313. Such considerations are to affect the damages to the residue of those lots parts of which are taken only so far as the railroad is brought nearer, and the inconvenience thus aggravated by its greater proximity due to the fact that part of the lots are taken. *Walker* v. *Old Colony & Newport Railway*, 103 Mass. 10.   *Johnson* v. *Boston*, 130 Mass. 452, 454.   *Cassidy* v. *Old Colony Railroad*, 141 Mass. 174, 178.   See also *Pierce* v. *Worcester & Nashua Railroad*, 105 Mass. 199, 201; *Fay* v. *Salem & Danvers Aqueduct*, 111 Mass. 27; *Drury* v. *Midland Railroad*, 127 Mass. 571, 583; *Sawyer* v. *Davis*, 136 Mass. 239, 241.   Craddock Avenue seems not to be a public way, and therefore the narrowing caused by the taking of some portion of it for the railroad may be a ground for allowing damages to lots abutting on the street, and perhaps to other lots which had an easement on the avenue.   See *Stanwood* v. *Malden*, 157 Mass. 17.   But this certainly would not be a ground of damage to all the lands in Wellington.   *Meacham* v. *Fitchburg Railroad*, 4 Cush. 291, 298.   *Brainard* v. *Connecticut River Railroad*, 7 Cush. 506, 511.   *Presbrey* v. *Old Colony & Newport Railway*, 103 Mass. 1.

*Verdicts set aside.*