TRUSTEES OF BOSTON UNIVERSITY *vs.* COMMONWEALTH.

SAME *vs.* SAME.

SAME *vs.* SAME.

Suffolk. March 9, 1934. — March 27, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Damages,* For property taken or damaged under statutory authority.
*Evidence,* Opinion: expert. *Practice, Civil,* Charge to jury, Exceptions.
*Words,* "Parcel."

Where, at the trial of a petition for the assessment of damages due to a
taking of land by the Commonwealth under St. 1926, c. 365, for the
construction of an extension of a way beyond the end of Bay State
Road in Boston, it appeared that included in the taking was a strip
of land which was not used for the extension of the way and was
between it and remaining land of the petitioner, and an expert witness
had testified that in his opinion considerable diminution in the value of ·
the petitioner's entire remaining tract resulted from the taking, it was
proper to permit the expert to state, as one of his reasons for such opinion,
that the strip was "controlled by the Commonwealth to utilize as is per-
mitted by statute, I presume . . . as would be done by a private owner."

In the eminent domain proceedings which were the basis of the petition
above described, the respondent took land which was a part of a
much larger tract on both sides of it, separated from it by public ways
and having public ways running through it transversely. The peti-
tioner was a university. There was evidence that the entire prop-
erty of the petitioner at the time of the taking was adapted for use
as the site for a university, for which purpose the jury could find it
was held, and was not fit for that use afterwards; that the taking
caused injury to the remaining land respecting that use, and use for
hospital buildings or apartment houses, for which it was also adapted.
The Commonwealth asked the trial judge to rule that " 'remaining
lands' of an owner, for which damages may be recovered consequent
upon the actual taking, does not include land separated from the
part actually taken by a validly laid out city street, in actual use
both before and after the acquisition of title in the land by the owner
and at the time of the taking," and to apply said ruling to exclude
consideration of the diminution in value of land of the petitioner
separated by a public street from the part taken. The requests were
refused. *Held,* that

(1) It could not properly be ruled as a matter of law that, in assessing
damages, the entire tract of the petitioner could not be treated as a
single parcel under G. L. c. 79, § 12;

(2) The requests properly were refused.

The course of the trial above described, as shown by the record before this court, made clear the contention of the petitioner that it was entitled to damages under G. L. c. 79, § 12, due to injury to the portion of its larger parcel of land not taken by the Commonwealth. In the charge, the principle upon which damages for the injury to the remaining land were to be assessed was not definitely stated. No request was made by the Commonwealth at the end of the charge for a statement of the rule upon which damages for the injury to the remaining land were to be assessed. In its bill of exceptions, the Commonwealth alleged an exception to "so much [of the charge] as dealt with damages to the remaining land," and in its brief before the court described that exception as being "in effect to the failure of the court to recognize and state the principle of law that damages are to be paid in a total sum, which shall include the fair market value of the part taken only, plus the diminution in value of the part remaining." *Held*, that in the circumstances the exception must be overruled.

THREE PETITIONS, filed in the Superior Court on November 14, 1927, November 27, 1928, and February 28, 1931, respectively, for the assessment of damages due to a taking of land by eminent domain as described in the opinion.

The petitions were tried before *Donnelly*, J. Material evidence is described in the opinion.

The circumstances in which the exception, called in the opinion the "first exception," was saved, were as follows: William J. Keville, a witness for the petitioner, was asked, "Now what do you say was its [referring to the entire tract of the petitioner] fair market value after the taking of November 11, 1926?" and he replied that, in his opinion, the fair market value of the entire tract after the taking was $1,632,617. The witness then testified that his reasons for that opinion were:

"First, the reduction in the size of the lot, the taking away of the water frontage from this lot and the rights which accrued to the ownership of the abutting land and to the owner; the extension of Bay State Road, making Soldiers Field Road a through traffic artery, similar in volume of traffic or capable of handling a volume of traffic as Commonwealth Avenue, one way.

"The lot of land no longer enjoyed the quiet and the semi-privacy which comes from its location at the end of a road; the additional traffic artery, and frontage on a street such

as Bay State Road on the back, which was not necessary for the accessibility to this lot. It already had everything that it needed by the abutting on Commonwealth Avenue, or its abutting on Commonwealth Avenue and the end of Bay State Road which ran right to this land. There is remaining in the Commonwealth the title to a lot of land between the land of Boston University and the extension of Bay State Road, which is controlled by the Commonwealth to utilize as is permitted by statute, I presume by the Commonwealth as would be done by a private owner.

"ATTORNEY FOR THE RESPONDENT: I object and ask that the last be struck out.

"THE JUDGE: No, he is being asked a fact; what are the reasons for it, so I will allow that to stand.

"ATTORNEY FOR THE RESPONDENT: The latter part of it, if your Honor please; will your honor save my rights;

"THE JUDGE: Yes."

At the close of the evidence, the respondent asked for and the judge refused to give the following rulings:

"1. 'Remaining lands' of an owner for which damages may be recovered consequent upon the actual taking, does not include land separated from the part actually taken by a validly laid out city street, in actual use both before and after the acquisition of title in the land by the owner and at the time of the taking.

"2. The land of the petitioners, being east of Chilmark Street, is not such 'remaining land' with relation to the 11,892 square feet actually taken in 1926 west of said street, that the petitioner may recover for damages to it, consequent upon such actual taking.

"3. In assessing damages, if any, to the land of the petitioner, remaining after the actual taking of 11,892 square feet in 1926, the jury is limited to a consideration of the damages to the land in the tract referred to as block G, being west of Chilmark Street."

There were verdicts for the petitioner in the sums of $375,045.60, $2,172.80, and $12,781.60, respectively. The respondent alleged exceptions.

Respecting the "first exception," above described, the respondent in its brief argued as follows:

"It appears from this testimony, therefore, that one reason which the witness considered and which he assigned as a cause for the property being worth less after the taking was that the Commonwealth might make such use of the part taken lying between the remaining land in lot G of the Boston University and the wrought boulevard as would be made by a private owner. This first taking was for the purpose of constructing a parkway or boulevard, in accordance with St. 1926, c. 365. . . . By this testimony, quoted above, the witness wished the jury to consider that on that part of the land taken lying between the remaining land of Boston University and the wrought surface of the boulevard the Commonwealth might erect a building, just as a private owner could do if the tract were privately owned, and thus shut out from the remaining land in lot G all access to the boulevard and, in addition, by the erection of such a building, take away from lot G the light and air and the view which the lot would enjoy situated on a parkway or boulevard. The petitioner may, however, seek to point to G. L. c. 92, § 85, as a provision which allows the Metropolitan District Commission, in certain instances and under certain conditions, to sell land acquired in fee, and then argue that after the sale the person buying the land could erect a building on it or make any other use of it. Even such a reason, which is not the reason advanced by the witness, would not be one for which damages are to be assessed."

*D. A. Foley*, Assistant Attorney General, for the respondent.

*W. Flaherty*, (*H. M. Leen* & *C. G. Keene* with him,) for the petitioners.

LUMMUS, J.    On November 11, 1926, under St. 1926, c. 365, the Commonwealth took thirteen thousand two hundred four square feet of land belonging to the petitioner at the westerly corner of Chilmark Street and Bay State Road in Boston, together with "the area of thatch, flats and land under water appurtenant to said area" in

the Charles River Basin.  Two successive smaller takings of flats only were made later, but these exceptions do not involve them.  Three petitions, based on these takings, were tried together.  For the first taking, the jury awarded the petitioner $375,045.60.  The Commonwealth alleged exceptions.

Besides the land taken, the petitioner owned a considerable tract of land west of Chilmark Street, bounded southerly on Commonwealth Avenue and northerly on the land taken; a large tract east of Chilmark Street and extending easterly to Ashby Street, bounded southerly on Commonwealth Avenue and northerly on Bay State Road, except that there was one house lot in other ownership until the petitioner acquired it on August 31, 1928; and a large tract east of Ashby Street and extending easterly to Granby Street, bounded southerly on Commonwealth Avenue and northerly on Bay State Road.  Bay State Road skirts the Charles River Basin.  All these ways were public ways, and the fee in them, subject to the public easement, was in the petitioner so far as its land bordered on them.  Before the taking, Bay State Road had its western end at Chilmark Street, and none of the ways named, except Commonwealth Avenue, was much travelled.  The improvement for which the land was taken made Bay State Road a main thoroughfare.

The first exception we consider is to a ruling upon evidence.  A witness for the petitioner, testifying as an expert that the value of the entire property at the time of the first taking was $2,117,290, and $1,632,617 afterwards, stated, as one of a number of reasons for his opinion, that the Commonwealth had taken a strip of land not used for Bay State Road, between that road and remaining land of the petitioner, upon which a building might be erected, tending to shut off the light, air and view.  There was no error in permitting the witness to state this as one of his reasons.  Although the taking was for a parkway or boulevard, the erection of a building on this strip was a possibility for which no further damages could be later claimed.  Further-

more, a sale of the strip to private persons was possible. G. L. c. 92, § 85.

The Commonwealth excepted to the refusal by the judge to instruct the jury in effect that the diminished value of the land of the petitioner east of Chilmark Street could not be considered in assessing damages for the taking of land west of Chilmark Street. There was evidence that the entire property of the petitioner, at the time of the first taking, was adapted for use as the site of a university, for which purpose the jury could find it was held, and was not fit for that use afterwards. There was evidence that for that use, and for use for hospital buildings or apartment houses, for which the land of the petitioner east of Chilmark Street was also adapted, the taking caused injury to that land.

In *Wellington* v. *Boston & Maine Railroad,* 164 Mass. 380, 381, 382, this court said, "Whether a particular lot of land constitutes an independent parcel is a question which cannot be determined in the affirmative by the mere fact that it is separated from other land by a highway or street, or by paper lines, or by fences; nor can it be determined in the negative by the mere fact that it is all in one ownership and is not divided by streets or by paper lines." In that case, however, the absence of evidence that all the land was "used together, or held for sale as one parcel," caused this court to hold that each division was a separate and distinct parcel. In *Lincoln* v. *Commonwealth,* 164 Mass. 368, 379, this court said, "No doubt there are many cases in which the court is able to see, from the way in which they are divided and used, that different parcels of land, even if they adjoin one another, are to be regarded as distinct. . . . But the question is a practical one, and the mere intervention of a way legally established, but not visible on the surface of the ground, is not conclusive. If, as here, the whole estate was practically one, the petitioner is entitled to have the damage to the whole of it considered. As was said by Dixon, C.J., we are to look at the land, and not at the map, to ascertain the plaintiff's damages." The former case arose under a statute (Pub. Sts. c. 112, § 95)

providing for the payment of "all damages occasioned by laying out, making, and maintaining its road, or by taking land or materials therefor"; and the latter case arose under St. 1889, c. 439, § 4, which gave "all damages that shall be sustained . . . by reason of such taking." At that time there was a tendency, shown in the latter case, to hold that such language gives no right to damages unless some land of the petitioner is taken. As to this, compare the later cases of *Hyde* v. *Fall River*, 189 Mass. 439, and *Howell* v. *New York, New Haven & Hartford Railroad*, 221 Mass. 169. The *Wellington* and *Lincoln* cases show that land divided by public ways may be deemed a unit, but they do not fully govern the present case, in which the intervening public ways were actually wrought and travelled. See also *Tucker* v. *Massachusetts Central Railroad*, 118 Mass. 546; *Providence & Worcester Railroad* v. *Worcester*, 155 Mass. 35, 40.

The English cases tend in favor of the petitioner. *Holditch* v. *Canadian Northern Ontario Railway*, [1916] 1 A. C. 536, affirming *Canadian Northern Ontario Railway* v. *Holditch*, 50 Canada Sup. Ct. 265, arose under a statute which provided for "full compensation . . . to all persons interested, for all damage by them sustained by reason of the exercise of such powers." The Privy Council held that this language did not permit an award of damages for injury to other lands of the petitioner, divided from the lands taken by public ways, unless "the lands taken are so connected with or related to the lands left that the owner of the latter is prejudiced in his ability to use or dispose of them to advantage by reason of the severance" (*Horton* v. *Colwyn Bay & Colwyn Urban District Council*, [1908] 1 K. B. 327), but that the question, whether the lands are so connected or related as to constitute a single holding, depends on the circumstances. The same principle was applied in *Sisters of Charity of Rockingham* v. *Rex*, [1922] 2 A. C. 315.

St. 1926, c. 365, under which the extension of Bay State Road was undertaken, is silent as to the measure of damages. Reference must be had to G. L. c. 92, § 80, and c. 79, § 12.

The section last cited provides that "in case only part of a parcel of land is taken there shall be included damages for all injury to the part not taken caused by the taking or by the public improvement for which the taking is made." When that language was first chosen (St. 1918, c. 257, § 187, sub-section 12), the *Wellington* and *Lincoln* cases were familiar, and the principle, that land divided by public ways may nevertheless be treated as a unit in awarding damages for a severance where part is taken, was well recognized in the law of Massachusetts. Nothing in the statute indicates an intention to negative that principle. The statutory word "parcel," like the cognate words "tract" and "lot," has no invariable meaning. In different connections these words may vary in scope. See *Orr* v. *Fuller,* 172 Mass. 597; *Scholl* v. *Fleischer,* 251 Mass. 451. Since the evidence jus-tified a finding that all the land of the petitioner in the neighborhood was held as a unit for a single purpose, and that each part was dependent on every other, it could not be ruled as matter of law, as the Commonwealth requested, that it could not be treated as a single parcel in assessing damages. This result accords with many decisions in other States. *Essex Storage Electric Co. Inc.* v. *Victory Lumber Co.* 93 Vt. 437, 446, 447. *Darlington* v. *Pennsylvania Rail-road,* 278 Penn. St. 307. *State* v. *Hoblitt,* 87 Mont. 403, 408. Note, 57 L. R. A. 932.

The last exception is to "so much . . . [of the charge] as dealt with damages to the remaining land." The Common-wealth describes this exception as being "in effect to the failure of the court to recognize and state the principle of law that damages are to be paid in a total sum, which shall include the fair market value of the part taken only, plus the diminution in value of the part remaining." See *Vineyard Grove Co.* v. *Oak Bluffs,* 265 Mass. 270, 278; *Baker* v. *Ar-lington,* 271 Mass. 415, 420. It is true, that the principle upon which damages for the injury to the remaining land were to be assessed was not definitely stated. We cannot share, however, the fear of the Commonwealth that the jury awarded the full value of all the property of the petitioner as though all had been taken. The course of the trial, as it

appears on the record, made clear the contention of the petitioner as to injury to the remaining land. Not unlikely the omission of the judge to state the rule definitely was due to that fact. No request was made at the end of the charge for a statement of the rule upon which damages for the injury to the remaining land were to be assessed. *Brick* v. *Bosworth,* 162 Mass. 334, 337, 338. *Mahoney* v. *Gooch,* 246 Mass. 567, 571. *Commonwealth* v. *Johnson,* 250 Mass. 320, 323, 324. *Mahoney* v. *Boston Elevated Railway,* 271 Mass. 274. *Hughes* v. *Whiting,* 276 Mass. 76, 79. The exception taken apparently referred vaguely to something said rather than to something left unsaid. To sustain such an exception would not be fair to the judge or to the prevailing party. Doubtless both would have been quite willing to have the rule stated had the omission to state it been pointed out. *Anderson* v. *Beacon Oil Co.* 281 Mass. 108.

*Exceptions overruled.*