## UNITED STATES v. 7936.6 ACRES OF LAND, MORE OR LESS, SITUATED IN MUNICIPALITY OF VIEQUES, PUERTO RICO, et al.

### Civ. No. 2714.

District Court, Puerto Rico.
Jan. 21, 1947.

Philip F. Herrick, U. S. Atty., of San Juan, P. R., for petitioner.

E. T. Fiddler, of San Juan, P. R., for defendants.

COOPER, District Judge.

This proceeding involves the condemnation of 7936.6 acres of land in the municipality of Vieques, Puerto Rico. The case was tried in this Court and a judgment duly entered on the 29th of December, 1942. This Court held that there was no basis for severance damages and struck testimony offered by defendant in support of the claim for severance damages. The case was appealed by the defendants and the Circuit Court of Appeals for the First Circuit reversed this Court and directed that the case be remanded for further proceedings not inconsistent with the opinion of the Appellate Court. Baetjer v. United States, 1 Cir., 143 F.2d 391, 395. In the opinion of the Circuit Court it is stated:

"The court below therefore erred in ruling that the appellants' lands on Puerto Rico had not been severed in the legal sense from their lands in Vieques. Their evidence should have been considered in order to determine as a matter of fact whether, in spite of lack of physical contiguity, their holdings by reason of the uses to which they were being put, or would probably be put in the reasonably near future, constituted a single, integrated, unitary tract. But it does not follow that the appellants are necessarily entitled to severance damages if this question is answered in their favor."

The Circuit Court of Appeals also stated: "* * * This evidence was to the effect that in the past the appellants had raised sugar cane on the lands on Vieques which the government has taken; that they had transported this cane to their mills on the main island of Puerto Rico for processing into sugar; and that, there being no other lands economically available upon which they could raise cane to keep their mills running at full capacity, they had suffered a loss to the extent of $270,000 'in value of excess equipment.' The meaning of the phrase just quoted is not altogether clear. If it means that after the taking the appellants' mills had an uneconomic over-capacity so that they could not be operated by the appellants as efficiently and therefore as profitably as before the taking, then the stricken evidence shows only a loss to business which resulted as an unintended incident of the taking and so a loss not compensable under the doctrine of Mitchell v. United States, supra. On the other hand, if it means, and there is other evidence tending to show that this is what the witness who used the phrase meant by it, that the over-capacity of the mills with respect to cane lands available to supply them has depreciated their value on the market to the extent of $270,000, then the evidence

330

would tend to show a compensable loss. In short the stricken evidence would indicate a compensable loss only if it means that after the taking the appellants' mills had an uneconomic over-capacity so that they could not be operated by anyone as efficiently and therefore as profitably as before the taking, this being a matter which a hypothetical willing buyer would consider in determining what he would pay for the property. * * *."

The foregoing quotations from the opinion of the Circuit Court of Appeals makes clear the issues now to be determined. This Court is now called upon to determine (a) the fair market value of the property taken; (b) the compensation due defendants as severance damages, if I find that the claim for severance damages has been sustained by the testimony. The condemned lands consist of two tracts designated as "A" and "B". Parcel "A" contains 6213.53 acres and was formerly a part of a larger tract of some 8800 acres belonging to defendants. Parcel "B" contains 1723.07 acres of land, more or less, and is five or six miles distant from Parcel "A". It is the defendants' contention that the property taken by this proceeding is a part of a single integrated property referred to in the answer as "Eastern Sugar Estates" consisting of approximately 30,000 acres of land on which are located four sugar mills, an extensive railway system, docks, warehouses and other facilities, which it is alleged, is devoted as an integrated whole to the raising of sugar cane; pasture for the raising and feeding of livestock; transportation of cane to sugar mills and the elaboration of raw sugar from canes grown on lands owned and leased and canes produced on lands of independent farmers.

It is alleged that the taking of the lands on Vieques deprives the defendant of a part of its lands essential for economical operation of the integrated properties. In other words, that the remainder of Eastern Sugar Estates as an integrated property suffered severance damages by reason of the taking of the land in Vieques. With respect to the market value of the lands actually taken on Vieques, defendant contends that the sum deposited by the Government as well as the amount allowed by

this Court in the previous trial is not just compensation for the same. It thus appears that three issues are presented for decision and it will be convenient to consider them separately.

1. Did the totality of the properties remaining in the ownership of Eastern Sugar Estates as a single integrated property consisting of four sugar mills, 30,000 acres of land, a railway system, docks, warehouses, etc., suffer depreciation in the market value of the same as a result of the taking of the lands on Vieques Island?

2. Did the lands and equipment remaining to defendants on the Island of Vieques suffer severance damages?

3. Was the sum of $235,459 deposited by the Government just compensation for the lands actually taken?

1. Eastern Sugar Estates, as already indicated, consists of lands owned by trustees who are parties-defendant herein. Also four sugar mills known as Santa Juana, Pasto Viejo, Juncos and Cayey. A railway system belonging to defendants connects Santa Juana, Juncos and Pasto Viejo with shipping facilities at Eumacao Playa. The cane grown on lands of Santa Juana can be ground at Juncos or Pasto Viejo and cane grown on lands of Pasto Viejo can be ground in the other mills. The cane grown on Cayey lands, although Cayey is not connected with the other three by railroad, can be transported by truck to Santa Juana or the other two mills for grinding. In fact, this has been done in a few instances. Communication with the lands of Eastern Sugar Estates in Vieques is maintained by barges and tugboats and so Vieques cane is taken to Pasto Viejo for grinding. The whole system or enterprise is under the direction of the President of Eastern Sugar Associates, who testified at the trial. His office is in Caguas, Puerto Rico, and from it he directs the operations of the four mills, the lands and other properties. To facilitate the operations of the system, it is divided into a field department, a factory department and a railroad and marine department. All are responsible to and controlled by the central management centered at Caguas. Although separate production records are kept for each farm, a centralized account-

ing system is maintained and planting programs are worked out with reference to the estate as a whole with a view to maintaining the total production of the estate at the highest possible level. The Vieques property's place in this scheme of affairs is the same as any other designated area within the defendants' holdings.

While physical contiguity is an important evidentiary fact in deciding what is a distinct and independent tract, integrated use not physical contiguity is the test. When this test of unity of use is applied to Eastern Sugar Estates, it must be held that Eastern Sugar Estates constituted a single unitary tract. It follows that the taking of the non-contiguous lands in Vieques constituted a severance in the legal although not the physical sense.

I must determine the question whether the rest of this integrated unitary property has suffered damage by reason of the severance of Vieques property. Defendants' contention is based on two premises:

1. After the taking defendants' mills have such an over-capacity with respect to the cane lands available to supply them that their value on the market has been materially reduced. In other words, a willing buyer seeking a satisfactory investment would pay less for the lands not taken than he would have paid for the same properties if there had been no severance.

2. With the reduction of pasturage in Vieques, the unitary tract or integrated property has been damaged because it is necessary to take cane lands out of production in order to graze the herd of oxen necessary for efficient operation of defendants' numerous acres of cane land. Defendants' witnesses on the question of severance damages testified at length. One of them is an analyst who has had no experience in the growing of sugar cane or in the sale of sugar cane lands. His personal first hand acquaintance with the lands involved was slight. Mr. Haslam seems to be under the impression that the properties of Eastern Sugar Associates would have no satisfactory market in Puerto Rico. That it could be sold only in a capital market such as New York. I cannot accept the statement that there is no satisfactory market in Puerto Rico for sugar cane lands and sugar cane centrals. It is conceivable that properties of Eastern Sugar Estates, if offered for sale, would bring to the owner a much higher price if sold in separate tracts or parcels. Mr. Haslam appraised the properties of Eastern Sugar Estates at $14,724,000 before taking and $13,312,000 after taking. He states that the taking caused an uneconomic over-capacity of mills and as the mills would have to grind colono cane instead of administration cane, it would result in a loss of profit. He concludes that Eastern Sugar Estates made a profit of $1.25 per ton of administration cane but only made 39 cents a ton on colono cane. He finds a potential production of 491,774 tons on the Island of Puerto Rico and 86,882 tons on Vieques. What he really states is that before the taking, administration cane on the Island of Puerto Rico plus the cane produced in Vieques, amounted to 578,656 tons. He estimated 604,520 tons for colono cane. By this process he reaches the conclusion that there was an excess grinding capacity of 78,000 tons after the taking, while before the taking the excess capacity amounted to 1824 tons. The lost tonnage, therefore, is 76,176 tons. I have searched the evidence in this case and am unable to accept the conclusions of Mr. Haslam.

Mr. Cochran states that the properties of Eastern Sugar Estates has suffered a depreciation of $1,515,000 based on a study of the capacity of land taken to produce cane and an estimate of the loss caused by forced abandonment of cane lands to pasture. Mr. Cochran estimates that land taken could produce an average of 50,400 tons of cane. He does not know that the said tonnage has ever been produced. His estimate is based almost entirely on the records of cane production on the lands remaining in Puerto Rico. He also states that 2400 acres of the lands taken are suitable for cane production and that 1680 cuerdas could be harvested yearly. He also figured on the production of 30 tons per acre. In arriving at his estimate of damages he took into consideration the loss of manufacturing profits. It is incumbent on the defendants in this case to sustain their contention by a preponderance of the evi-

332

dence. The Government produced several witnesses who state that properties not taken suffered no damage by the taking. These witnesses include Mr. Portela, Mr. Nido, Mr. Menendez Ramos and Mr. Villamil. Mr. Nido is engaged in the production of sugar cane and has a thorough understanding of its problems and is also familiar with the value of sugar cane lands. The same can be said of Mr. Villamil and Mr. Menendez Ramos. Mr. Portela has lived all of his life in Vieques and has a very intimate contact with sugar cane production on the island. In the light of their testimony I cannot find that defendants' contention is sustained by a preponderance of testimony. I think the preponderance is the other way. The damages sustained by the taking must be based upon the loss of future business or the loss of manufacturing profits, and as the Circuit Court of Appeals stated in this case, such losses are not compensable. In determining the greater weight of the testimony it is proper that I consider what seems to be established by the testimony that there has been a gradual reduction in cane planting on the island of Vieques for several years. If the testimony had established that cane plantings and harvesting on Vieques had continuously increased, it would certainly show a sound reason for giving to owners whose property is taken by condemnation a greater value than is the case where there has been a continuous decline.

█ My conclusion is that defendants have suffered no depreciation in the value of the lands or properties on the Island of Puerto Rico and that the property not taken in Vieques has suffered no severance damages.

I find that the sum of $235,459 deposited by the Government as just compensation for the land actually taken in Vieques is not just compensation for the land taken.

█ I find that the land taken had a market value at the time of taking of $380,000. A judgment in accordance with this opinion will be entered.

In reaching my conclusion I have considered and thoroughly studied all the evidence including other sales of land and also the history of the sugar industry in Vieques. According to the opinion of the Circuit Court of Appeals in this case it does not necessarily follow that severance damages must be awarded even though the testimony sustains that there has been a severance. That language when applied to the facts of this case, convinces me that while there has been a severance in the legal sense such severance has caused no compensable damage to the market value of the properties not taken.

It may be conceded that defendants have suffered a business loss or the loss of future profits but this is not compenable.

█ Defendants did not claim damages for any business loss or loss of future profits. The crux of this case is would a willing buyer pay as much for the properties not taken as he would before the taking. As already stated the testimony fails to show any compensable damage. In other words, the taking of the properties in Vieques does not affect the market value of the properties not taken.