VALLEY PAPER COMPANY *vs.* HOLYOKE HOUSING
AUTHORITY.

Hampden.    October 30, 1963. — December 10, 1963.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Evidence,* Of value, Judicial discretion, Cross-examination. *Damages,* Eminent domain. *Eminent Domain,* Damages.

If a parcel of land taken by eminent domain, near but not contiguous to another parcel of the same owner on which he conducts a business, is fairly adaptable to use for expansion of the business, is being held for that use, and is likely to be so used in the reasonably near future, and its taking adversely affects the market value of the other parcel, the two parcels may be treated as a unit in the assessment of damages for the taking and compensation for the injury to the other parcel may be included in the damages. [567]

At the trial of a petition for assessment of damages for a taking by eminent domain of a vacant parcel of land of a paper company claimed by it to be held "for future expansion of" its business then conducted on a nearby, but not contiguous, parcel on which "all available space . . . was fully utilized," there was no error in exclusion of a question to a witness for the company whether the taking affected the future use of the other, remaining parcel where there was no evidence of the probable needs of the company or other occupant of the remaining parcel respecting expansion of business or of likelihood of use of the taken parcel for that purpose in the reasonably near future, so that basis for treating the two parcels as a unit in the assessment of damages had not been laid. [564–565, 568]

After a witness for the petitioner at the trial of a petition for assessment of damages for a taking by eminent domain had testified to a certain sum per square foot as the fair rental value of the petitioner's buildings, there was no error in allowing a question to the witness on cross-examination whether he had participated in rentals in the locality at a substantially smaller sum per square foot. [568]

At the trial of a petition for assessment of damages for a taking by eminent domain of a vacant parcel of land of a paper company conducting its mill on nearby land, no abuse of discretion appeared in admitting evidence of certain sales of other vacant land to which no water rights were attached where, even if certain mill powers were appurtenant to the taken parcel, they had not in fact been used [569]; or in admitting evidence of a sale of buildings formerly occupied by a textile manufacturing concern. [569]

PETITION filed in the Superior Court on May 20, 1959.

The case was tried before *Macaulay, J.*

The case was submitted on briefs.

*Emerson S. Searle, Socrates Geanacopoulos & Clarke S. Lyon* for the petitioner.

*Joseph F. Kelly & Myer L. Feldman* for the respondent.

CUTTER, J. This is a petition under G. L. c. 79 by Valley Paper Company (Valley) to recover damages for the taking by the Holyoke Housing Authority on May 27, 1958, of 46,777 square feet of vacant land (the locus). The locus lies south of the second level canal of the Holyoke Water Power Company and also south of Canal Street (sixty feet wide), which is between the canal (about 140 feet wide) and the locus. Valley (in addition to damages for land actually taken) also seeks to recover for alleged diminution in value of its land (131,767 square feet) and mills on the north side of the canal. The accompanying sketch plan, based upon an exhibit, shows these properties roughly.

The jury awarded Valley $25,000 in damages. The bill of exceptions presents Valley's exceptions to the exclusion of evidence offered by it and to the admission of evidence offered by the Authority.

1. Valley endeavored to show that the locus had been an integral part of Valley's property north and south of the canal for about ninety years. It contended that its land, at the time of the taking, was devoted to a special use and that

the taking rendered the remaining land less usable for purposes of a paper mill.

There was evidence of the following. Valley had acquired title to these properties in 1866 and 1870, together with the right upon the payment of an annual rent "to use upon the premises . . . certain mill powers of water from the canal . . . [and] the right to take water from the canal for use in the manufacture of paper." Valley had operated a paper mill on its land (parcel 1) north of the canal from the time that it acquired title. At the time of the taking all available space on parcel 1 "was fully utilized." The last two buildings on parcel 1 were erected in 1956. The locus, for many years, had been occupied by houses for Valley's employees. These were later torn down and for some years prior to the taking the locus had been vacant. Part of Valley's land south of the canal was sold in 1945. Valley by deed had acquired the right to construct a bridge across the canal from parcel 1 to the locus, but had never built such a bridge. At the time of the taking, Valley claimed to hold the locus "for future expansion of the paper mill."

Valley called as a witness one Tucker, who had gained forty years' experience in the paper business and had been vice-president in charge of manufacturing of two paper companies in Holyoke. The trial judge ruled that he "was not qualified to testify as to value based on fair market value," but that the witness could "testify as to the probable uses the land had." The judge later "ruled that the witness was qualified to give testimony regarding reproduction costs." The witness then gave extensive testimony about Valley's plant. He stated that the best use of parcel 1 was for a paper mill and that, in his opinion, the reproduction cost of the buildings, less various types of depreciation and obsolescence, was $1,752,240. He was then asked by Valley's counsel whether the taking affected the future use of the mill property, that is, the actual "[u]se that could be made of it on the twenty-eighth day of May after the taking." The judge sustained an objection to the

question. A long and inconclusive discussion of the applicable authorities then took place. The objection was again sustained after the judge had said, ". . . [A]ssuming it is a question for expert opinion . . . still it is by use that could be made of it after the twenty-eighth day of May, that's future use, isn't it?"

Valley's counsel then offered to prove "that the land taken . . . was of special value to . . . Valley . . . because it was the only land on which this company could expand. The land taken . . . could most valuably be used in conjunction with the operation of the company for a finishing mill, for warehousing facilities, and trucking facilities. By the use of the right to erect a bridge, contained in the original deed . . . the two properties could be connected and operated together. . . . He would further testify that . . . there are a number of plants in this area so connected by bridges . . . [and] the witness is prepared to testify to the cost of such a bridge . . . ." It was also stated that the witness would testify to the value of the property before and after the taking, resulting in damage of $262,000.[1]

The exception to the exclusion of Tucker's testimony presents the question whether the locus was so separated from parcel 1 as to permit damages for the taking to be assessed without reference to its effect upon parcel 1, or whether Valley sufficiently held both parcels as a unit so that damages could include compensation for any injury to parcel 1.

---

[1] Later one O'Donnell, a real estate expert, called by Valley, was permitted to testify that, in his opinion, the fair market value of the entire property, including the locus, before the taking was $1,765,000 and that the remaining property was worth $1,500,000 after the taking so that, in his opinion, the damages were $250,000. Because he "found no sales that he considered comparable" and because no paper mills in the Holyoke area were rented, this witness had "adopted the method of appraisal known as reproduction cost depreciated and added to this the value of the land." O'Donnell "did not find any land in the vicinity which was accessible for further development or present development by the petitioner by bridge or otherwise on the day of the taking, except for the parcel which was taken . . . [and] this affected his opinion as to the fair market value of the mill property after the taking and was reflected in the difference between his opinions of the value of the mill property before and after the taking." Later he stated that he "took into consideration the fact that the company had lost a very valuable piece of land they possibly could use in the future for a paper mill; that the company had no further chance to expand . . . [in] any other future location."

Whether in such a situation, land in various parcels, contiguous or close together, is to be treated as a unit is essentially "a practical one." See *Lincoln* v. *Commonwealth,* 164 Mass. 368, 379–380. Where there is room for doubt, an issue of fact may be presented. See Nichols, Eminent Domain (3d ed.) §§ 14.3, 14.31. It is not conclusive that parcels are physically somewhat separated, if used together or if reasonably to be regarded as "held as a unit for a single purpose." See *Trustees of Boston Univ.* v. *Commonwealth,* 286 Mass. 57, 62–64. See also *Maynard* v. *Northampton,* 157 Mass. 218, 219. Cf. *Providence & Worcester R.R.* v. *Worcester,* 155 Mass. 35, 40; *Wellington* v. *Boston & Maine R.R.* 164 Mass. 380, 381–382.

Doubtless, the usual situation is that noncontiguous parcels are to be treated as separate for eminent domain purposes. Nevertheless, joint use or potentiality of joint use of two or more noncontiguous parcels may so substantially affect the market value of the remaining parcels, when one of them is taken, that it becomes appropriate, in assessing damages, to treat the separate parcels as in effect a unit.

A person whose land is taken is entitled to its market value, which "may reflect not only the use to which the property is presently devoted but also that use to which it may be readily converted. . . . [T]he value may be determined in light of the special or higher use of the land when combined with other parcels; it need not be measured merely by the use to which the land is or can be put as a separate tract. . . . But in order for that special adaptability to be considered, there must be a reasonable probability of the lands . . . being combined with other tracts for that purpose in the reasonably near future." See *United States* v. *Powelson,* 319 U. S. 266, 275–276; *Baetjer* v. *United States,* 143 F. 2d 391, 394–395 (1st Cir.), cert. den. sub nom. *United States* v. *Baetjer,* 323 U. S. 772 (*S. C.* sub nom. *United States* v. *7936.6 Acres of Land,* 69 F. Supp. 328 [D. P. R.]).

The *Baetjer* opinion states that the decision whether to treat tracts as "single" or "separate" does not "wholly

depend upon whether holdings are physically contiguous. Contiguous tracts may be 'separate' ones if used separately . . . and tracts physically separated . . . may constitute a 'single' tract if put to an integrated unitary use or *even if the possibility of their being so combined in use 'in the reasonably near future'* . . . 'is reasonably sufficient to affect market value' " (emphasis supplied).[2]

One useful attribute of a parcel of land may be that it affords capacity for expansion of a business operation. This is recognized by *Producers' Wood Preserving Co.* v. *Commissioners of Sewerage,* 227 Ky. 159, 165–169, and by *St. Louis* v. *Paramount Shoe Mfg. Co.* 237 Mo. App. 200, 214–215, 218, 221. In a sense property reasonably held for the expansion of a business is used in that business. Such a view seems consistent with the few relevant intimations in the Massachusetts cases. See the *Maynard* case, 157 Mass. 218, 219; the *Trustees of Boston Univ.* case, 286 Mass. 57, 64.

We conclude that, where there is substantial basis for finding that a noncontiguous parcel taken by eminent domain (a) is being held for the expansion of a business operation conducted upon the owner's remaining land, (b) is fairly adaptable to that use, (c) is likely so to be used prior to a time not so remote as to be speculative, and (d) its taking adversely affects the market value of the remaining land, the trier of the facts may treat the parcel, for the assessment of damages, as part of the property where the business is conducted. In the present case, of course, parcel 1 and the locus can perhaps be regarded as contiguous, because of the opportunity to construct a bridge across the canal. Even apart from this, the principles just stated

---

[2] See *Essex Storage Elec. Co. Inc.* v. *Victory Lumber Co.* 93 Vt. 437, 446–448; Annotation, 6 A. L. R. 2d 1197, 1226–1234. See also discussion in *People* v. *Thompson,* 43 Cal. 2d 13, 26–27; *Cameron* v. *Pittsburgh & Lake Erie R.R.* 157 Pa. 617, 621; and *Morris* v. *Commonwealth,* 367 Pa. 410, 412–416; *Elgart* v. *Philadelphia,* 395 Pa. 343, 345–346. Cf. *United States* v. *Honolulu Plantation Co.* 182 F. 2d 172, 178–179 (9th Cir.); *International Paper Co.* v. *United States,* 227 F. 2d 201, 206–207 (5th Cir.); *Cole Inv. Co.* v. *United States,* 258 F. 2d 203, 205–206 (9th Cir.); *Kansas City & Grandview Ry.* v. *Haake,* 331 Mo. 429, 438; *Denton* v. *Hunt,* 235 S. W. 2d 212, 214–215 (Tex. Civ. App.).

would require the admission of otherwise competent evidence, in answer to properly framed questions, bearing upon the adaptability of the two parcels to common use and the practical effect of a severance of the locus.

Whatever may have been the reasons for the trial judge's exclusion of Tucker's testimony, there did exist a valid reason for his ruling, even under the principle of the cases cited above, in that no proper basis had been laid for treating the locus and parcel 1 as a unit. Apart from evidence, "that at the time of the taking all available space on . . . [parcel 1] was fully utilized," there had been no proof that Valley or any other possible occupant of parcel 1 would be likely to need space for expansion within the reasonably foreseeable future. No effort had been made, either through Tucker or by calling a representative of Valley's management, to show the probable needs of Valley (or of a purchaser of parcel 1 from it) with respect to an expansion of the operations conducted on parcel 1 at the time of the taking. Even the offer of proof was deficient in this respect. The absence of such proof was a sound reason for excluding testimony about the effect upon parcel 1 of the severance of the locus. Accordingly the judge's ruling must be sustained.[3]

2. It was not error to permit the cross-examination of O'Donnell (who had testified that the fair rental value of Valley's buildings was $1.50 a square foot) concerning whether he had participated in the rental of industrial space in Holyoke at sixty cents a square foot. Although such evidence concerning other properties has been excluded as direct proof of value, because "not sufficiently relevant to warrant the extension of the field of controversy and fact finding which is entailed in its admission" (see *Wenton* v. *Commonwealth*, 335 Mass. 78, 82–83), we view this question as permissible testing of O'Donnell's knowledge.

[3] O'Donnell (see fn. 1, *supra*) was later permitted in somewhat less direct fashion to give weight to the loss of the locus for possible expansion of the operations on parcel 1, which may indicate that, upon less vague questions for which a proper basis had been laid, Tucker would have been allowed to describe the respects in which the severance of the locus would adversely affect parcel 1.

3.  We cannot say that evidence of certain sales of vacant land (near the locus) to which no water rights were attached was inadmissible.  Even if mill powers were appurtenant to the locus as well as to parcel 1 (see, however, *Holyoke Water Power Co.* v. *Whiting & Co. Inc.* 276 Mass. 528, 535–537), in over eighty years no such mill power appears to have been used directly in connection with the locus.  The judge could reasonably conclude that mill powers did not so affect the value of the locus, as a practical matter, as to prevent the other properties from being reasonably comparable to the locus.

4.  More difficulty is presented by the introduction of evidence of the sale in 1956 of nearby buildings, formerly occupied by the Farr Alpaca Company for weaving alpaca cloth.  The buildings had been abandoned for textile use in 1935 or 1936, and in 1955 were occupied for various industrial uses.  The differences brought out by Valley (a) between buildings actively used for paper manufacture and abandoned textile buildings, and (b) between vacant land and land with buildings upon them (see, however, *Leen* v. *Assessors of Boston,* 345 Mass. 494, 505–506), suggest that such a sale might be of little help in determining the value of either parcel 1 or the locus.  In these matters "much of necessity must be left to the discretion of the presiding judge on the question whether the similarity [between properties] is such as to render the testimony competent," although that discretion is not unlimited.  *Congregation of the Mission of St. Vincent de Paul* v. *Commonwealth,* 336 Mass. 357, 359.  *Brush Hill Dev. Inc.* v. *Commonwealth,* 338 Mass. 359, 366–367.  See *Iris* v. *Hingham,* 303 Mass. 401, 406–408; *Epstein* v. *Boston Housing Authy.* 317 Mass. 297, 299–300; *Consolini* v. *Commonwealth, ante,* p. 501. The judge when he admitted the testimony said that he would "instruct the jury" appropriately.  Although this part of his charge does not appear in the record, we must assume that his instructions were adequate and complete, for no exception was taken to his charge.

*Exceptions overruled.*