CORLISS REALTY COMPANY, INC. *vs.* COMMONWEALTH.

Worcester.    January 18, 1973. — January 30, 1974.

Present: ROSE, GOODMAN, & ARMSTRONG, JJ.

*Evidence,* Of value, Judicial discretion.    *Damages,* Eminent domain. *Eminent Domain,* Damages.    *Value.*

At the trial of a petition for assessment of damages for a taking of land claimed to curtail quarrying on the petitioner's remaining land, there was no error in the admission of evidence of the price paid in a sale, about four years before the taking, of a quarry which was situated about five miles from the petitioner's property, contained the same kind of granite as that in the petitioner's quarries, and had various other similarities to and certain differences from the petitioner's quarries; the fact that the seller in such sale reserved a right to take the "loose stone" on the quarry sold did not appear on the record to have rendered indefinite the price paid for the real estate itself. [691-692]

At the trial of a petition for assessment of damages for a taking of land claimed to curtail quarrying on the petitioner's remaining land, it was within the discretion of the judge, during cross-examination of a respondent's witness who testified as to his purchase of a certain quarry and the price paid, to exclude a question whether he had an opinion as to the comparability of such quarry with a quarry of the petitioner, where the petitioner availed itself fully of an opportunity to elicit from the witness various alleged differences between the two quarries. [692-693]

PETITION filed in the Superior Court on December 13, 1967.

The case was tried before *Rutledge,* J.

*George A. McLaughlin, Sr. (Edward J. Lonergan* with him) for the plaintiff.

*Kevin P. Curry,* Assistant Attorney General, for the Commonwealth.

GOODMAN, J.    This is a petition for assessment of damages caused by the taking of a portion of the petitioner's land in Milford. The petitioner claimed that the taking would curtail its quarrying operations on the remaining portion of its land which contained two quarries of "Milford Pink Granite." One (the Dodd quarry) was in operation at the time of the taking, May 17, 1967, and the other (the Norcross quarry) was inactive and had not been worked since at least 1930. The petitioner's exceptions relate solely to the admission and exclusion of evidence.

The respondent called a witness who testified that in 1963 he had bought a quarry (the Maguire quarry), not then in operation, about five miles from the petitioner's property and that this quarry had also contained "Milford Pink Granite."[1] He further testified that he had paid $10,000 for the Maguire quarry, with a right in the seller to take whatever loose stone was then on the premises. The petitioner contends that it was error to admit in evidence the purchase price of the Maguire quarry because it was not comparable to the petitioner's property and because the sale price was not sufficiently definite. We disagree.

The petitioner sets out in its brief a list of differences which, it contends, existed between the Dodd quarry and the Maguire quarry. The respondent sets out a list of similarities between the Maguire quarry and the Dodd quarry and between the Maguire quarry and the Norcross quarry. From our examination of the record we conclude that the trial judge was well within the broad scope of his discretion in determining, as he implicitly did, that the

---

[1] There was a conflict in the expert testimony, previously elicited, whether the granite in the petitioner's land was geologically or commercially unique.

similarities between the Maguire quarry and the petitioner's property, particularly the inactive Norcross quarry,[2] were such that evidence of the sale of the Maguire quarry might be helpful to the jury. There was evidence that the Maguire property was about five miles from the petitioner's property; its purchase in 1963 was not too remote in time. *Johnson* v. *Lowell,* 240 Mass. 546, 549 (1922). It was located within the same granite belt and contained "Milford Pink Granite." See *H. E. Fletcher Co.* v. *Commonwealth,* 350 Mass. 316, 325 (1966). Nor was it an abuse of discretion likewise to determine that the dissimilarities were not such that the jury, properly instructed (see *Valley Paper Co.* v. *Holyoke Housing Authy.* 346 Mass. 561, 569 [1963]), would be misled or confused. *Lyman* v. *Boston,* 164 Mass. 99, 105 (1895). *Iris* v. *Hingham,* 303 Mass. 401, 408-409 (1939). *Congregation of the Mission of St. Vincent de Paul* v. *Commonwealth,* 336 Mass. 357, 359 (1957). See *H. E. Fletcher Co.* v. *Commonwealth,* 350 Mass. 316, 324-325 (1966); *Nonni* v. *Commonwealth,* 356 Mass. 264, 268-269 (1969); *Silk* v. *Commonwealth, ante,* 149, 155 (1973).

The petitioner's argument in its brief that "the actual price [of the Maguire quarry] in the case at bar could not be accurately or definitely stated in money, nor was it" is answered by the trial judge's statement in the course of denying the petitioner's motion to strike,[3] "that the loose stone was already quarried. . . . [T]he deed contains noth-

---

[2] The petitioner had claimed, as an element of damage, that the taking had made it impossible to operate the Norcross quarry.

[3] The answer to which the motion to strike was directed was in response to the question as to the purchase price of the Maguire quarry. The answer was: "This is what we paid. We paid $10,000.00 for the property, plus the option by Mr. Paltrineri to remove the stone as long as he wished, the loose stone, and he did that for about five years." To the extent that the answer dealt with the loose stone, it may have been irrelevant, but there was no attempt to strike only that portion of the answer. *Bryer* v. *P. S. Thorsen Co. of Mass.* 327 Mass. 684, 687 (1951). Subsequently, the petitioner objected (saving its exception) to the receipt in evidence of the deed, which showed only the $10,000 consideration. It did not thereafter raise any objection to the further testimony on direct examination as to the seller's option to take the already quarried stone. We assume that the jury were properly instructed, in accordance with the judge's ruling, to consider the cash as the sale price of the real estate. See *Maynard* v. *Northampton,* 157 Mass. 218, 220 (1892); *Valley Paper Co.* v. *Holyoke Housing Authy.* 346 Mass. 561, 569 (1963). The record contains no objection to the charge.

ing in the way of encumbrance on the title and it would appear that the $10,000 price was the price that was paid for the real estate itself."

He thus properly distinguished between the real estate for which $10,000 was paid and the loose stone, regarded as personalty, which the seller had reserved. Indeed, had the petitioner asked that the references to the loose stone be struck (see n. 3), it might well have been "a wise exercise of discretion to exclude the value of the separable material as a 'confusing and . . . speculative' factor in determining the market value of the property as real estate." *Joseph De Vries & Sons, Inc.* v. *Commonwealth,* 339 Mass. 663, 664 (1959). *Manning* v. *Lowell,* 173 Mass. 100, 102-103 (1899). *Consolini* v. *Commonwealth,* 346 Mass. 501, 502 (1963). The petitioner's reliance on *Iris* v. *Hingham,* 303 Mass. 401 (1939), is misplaced. In that case it was held error to admit the price of the allegedly comparable real estate because a ten-year interest reserved by the seller could not be valued except as a matter of opinion. That factor made the entire price of the real estate, in which the reservation was an element, also a matter of opinion and therefore inadmissible. *McCabe* v. *Chelsea,* 265 Mass. 494 (1929). Here, the value of the loose stone formed no part of the price paid for the real estate as a source of quarriable granite. Indeed, the estimate by the petitioner's witnesses of damage to its property was made on that basis. They disregarded the value of the loose stone on the petitioner's property and appear to have considered it to be waste and therefore a liability rather than an asset in the determination of value.

The petitioner took exception to the exclusion of its question to the buyer of the Maguire quarry asking, "[D]o you have an opinion as to whether, at the time you bought this quarry, it was comparable to the Dodd Quarry?" It complains that the witness was thus precluded from "comment[ing] upon whether his quarry was comparable to petitioner's."[4] But the record indicates that the petitioner

---

[4] We treat this contention on its merits, though not precisely within the scope of the exception.

was given ample opportunity, of which it took full advantage, to elicit from the witness on cross-examination the various points of alleged difference between the Maguire quarry and the Dodd quarry. And "[i]t was much better to have the witness describe the two estates than to permit him to express his opinion on their . . . similarity." *Lyman v. Boston,* 164 Mass. 99, 104 (1895). The action of the trial judge, which resulted in excluding the vague and conclusory "comment," was well within his discretion. In any event, it "has not injuriously affected the substantial rights of the parties . . . ." G. L. c. 231, § 132. See *Saeli v. Mangino,* 353 Mass. 591, 593 (1968). Cf. *Brush Hill Dev. Inc.* v. *Commonwealth,* 338 Mass. 359, 367-368 (1959), cited by the petitioner, in which the owner was seriously hampered in pursuing a line of inquiry — in contrast to the latitude permitted by the trial judge in this case.

*Exceptions overruled.*